IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| John Thurman (#2018-0418116), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19 C 0338 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| A.J. Blanco, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

      Plaintiff's application for leave to proceed *in forma pauperis* [3] is granted. The Court orders the trust fund officer at Plaintiff's place of incarceration to deduct $20.70 from Plaintiff's account for payment to the Clerk of Court as an initial partial payment of the filing fee and to make monthly deductions in accordance with this order. The Court directs the Clerk of Court to electronically send a copy of this order to the Supervisor of the Inmate Trust Fund Accounts at the Cook County Jail. Summonses, however, shall not issue. Plaintiff's complaint [1] is dismissed without prejudice for failure to state a claim. If Plaintiff wants to proceed with this lawsuit, he must submit an amended complaint that states a federal claim against proper defendants. Failure to submit an amended complaint by March 1, 2019, will result in dismissal of this lawsuit for failure to state a claim. Plaintiff also must promptly submit a change-of-address notification if he is transferred to another facility or released. If Plaintiff fails to keep the Court informed of his address, this action will be subject to dismissal for failure to comply with a Court order and for failure to prosecute. The Court defers ruling on Plaintiff's motion for attorney representation [4]. The Clerk of Court is directed to send Plaintiff an amended complaint form, a blank USM-285 form, and instructions along with a copy of this order.

**STATEMENT**

      Plaintiff John Thurman, a detainee at the Cook County Jail, brings this *pro se* civil rights action under 42 U.S.C. § 1983 concerning his arrest on May 8, 2017, and subsequent criminal prosecution. He seeks to file his complaint without payment of the Court's filing fee in advance and has demonstrated that he does not have the means to prepay the fee. The Court therefore grants Plaintiff's application to proceed *in forma pauperis*.

      Pursuant to 28 U.S.C. § 1915(b)(1), (2), the Court orders: (1) Plaintiff to immediately pay (and the facility having custody of him to automatically remit) $20.70 to the Clerk of Court for payment of the initial partial filing fee and (2) Plaintiff to pay (and the facility having custody of him to automatically remit) to the Clerk of Court twenty percent of the money he receives for each calendar month during which he receives $10.00 or more, until the $350 filing fee is paid in full. The Court directs the trust fund officer to ensure that a copy of this order is mailed to each facility

where Plaintiff is housed until the filing fee has been paid in full. All payments shall be sent to the Clerk of Court, United States District Court, 219 South Dearborn Street, Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and should clearly identify Plaintiff's name and the case number assigned to this case.

Plaintiff's complaint, however, must be dismissed. Under 28 U.S.C. § 1915A, the Court is required to screen prisoners' complaints and dismiss the complaint, or any claims therein, if the Court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Courts screen prisoners' complaints in the same manner they review motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When screening a *pro se* plaintiff's complaint, courts construe the plaintiff's allegations liberally, *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam), "accept[ing] all well-pleaded facts as true and draw[ing] reasonable inference in the plaintiff's favor," *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

The events giving rise to Plaintiff's claims began on May 8, 2017, after a "verbal argument" between Plaintiff and his girlfriend at her apartment, and after she telephoned the police to have Plaintiff removed from the apartment. (Dkt. 1, pg. 4.) Plaintiff says that he left the building before officers arrived but, when the responding officers asked the girlfriend where Plaintiff was, she directed them "down the street." (*Id.*) The officers "caught up" with Plaintiff and "called to" him, but he "ignored them." (*Id.*)

When Officers Blanco and Gallegos emerged from their vehicle, Plaintiff ran toward his girlfriend's apartment. (*Id.*) The officers "gave chase" and "caught up" with Plaintiff at "the apartment building," where Plaintiff was "now suffering a serious asthma attack" and "unable to breathe." (*Id.*, pg. 4-5.) Blanco and Gallegos attempted to "restrain and handcuff" Plaintiff while his girlfriend "was screaming at the officers, telling them to stop because Plaintiff was having an asthma attack and needed his inhaler immediately." (*Id.*, pg. 5.) "At this point," additional officers arrived, "ordered" Blanco and Gallegos to stop, and called an ambulance. (*Id.*) An ambulance arrived "shortly after," Plaintiff received medical treatment and, "once the emergency was over," he was transported to the police station. (*Id.*) He was charged with "domestic battery and resisting arrest/obstruction of justice." (*Id.*) The battery charge was subsequently "dropped," and he allegedly was acquitted on the "resisting/obstructing charges." (*Id.*)

Plaintiff brings this lawsuit against Chicago Police Officers Blanco and Gallegos, the City of Chicago, and Cook County State's Attorney Kim Foxx. (*Id.*, pg. 1.) He contends that the

2

arresting officers did not have probable cause for his arrest and that they used excessive force in effecting the arrest. (*Id.*, pg. 6.) He also contends that the City failed to "adequately" train its officers in "the reasonable use of force and correct arrest procedures," and that the State's Attorney "committed torts of false imprisonment and malicious prosecution." (*Id.*)

Plaintiff's complaint suffers from several flaws. First, the facts alleged by Plaintiff do not support an inference that probable cause for his arrest was lacking. A police officer has probable cause to arrest a supect when the facts and circumstances known to the officer at the time of the arrest would cause a reasonable person to believe that the suspect has committed a crime. *Matthews v. City of E. St. Louis*, 675 F.3d 703, 706 (7th Cir. 2012). "Probable cause . . . does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Sawyer*, 224 F.3d 675, 679 (7th Cir. 2000). "The fact that criminal charges are eventually dropped or the complaining witness later recants has no consideration in the determination of" whether probable cause exited at the time of arrest. *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). Similarly, "whether a jury convicts or acquits does not impact the existence of probable cause at the time of arrest." *White v. Fitzpatrick*, __ F.App'x __, 2018 WL 6168633, at *4 (7th Cir. 2018) (citing *Askew v. City of Chicago*, 440 F.3d 894, 896 (7th Cir. 2006)).

Plaintiff's allegations establish that his girlfriend had called the police and that Plaintiff was not present when she spoke with Officers Blanco and Gallegos upon their arrival at her apartment; her statements alone may have provided probable cause to arrest Plaintiff for assault or battery. *See Matthews*, 675 F.3d at 706-07 (explaining that statements from "reasonably credible witness or victim" can provide the basis for probable cause). Plaintiff's disregard of the officers' commands, accompanied by his flight from the officers, also arguably provided justification for his arrest. *See* 720 ILCS 5/31-1(a) ("[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his or her official capacity commits a Class A misdemeanor"); *see also United States v. Shields*, 789 F.3d 733, 746 (7th Cir. 2015) (concluding that suspect's decision to run from officers during investigatory stop "would allow a reasonable officer to believe that" the suspect had interfered with the performance of the officers' duties in violation of 720 ILCS 5/31-1(a)). So long as Officers Blanco and Gallegos had probable cause to arrest Plaintiff for any crime then the arrest does not violate the Fourth Amendment. *See id.* at 745; *Askew*, 440 F.3d at 895.

Second, the facts alleged by Plaintiff fall short of showing that the arresting officers' conduct while attempting to restrain him was objectively unreasonable. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see Sow v. Fortville Police Dep't*, 636 F.3d 293, 304 (7th Cir. 2011). To determine whether a use of force is objectively reasonable requires "careful attention to the facts and circumstances of each particular case," including for example, whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Thus, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "Not every push or shove, even

if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Id.* at 396.

Here, the facts alleged by Plaintiff show only that Officers Blanco and Gallegos were attempting to "restrain and handcuff" him following a foot-chase and that the officers stopped when a colleague alerted them that Plaintiff required medical attention. The events surrounding the arrest—*i.e.*, from the time Plaintiff admittedly fled from the officers to the point where the officers stopped trying to place Plaintiff in handcuffs—appears to have evolved rapidly and ceased as soon as an officer not involved in the melee alerted Blanco and Gallegos to Plaintiff's need for medical attention. The Court therefore cannot say that the circumstances described by Plaintiff clear the threshold required of federal pleadings. *See Iqbal*, 556 U.S. at 678 (explaining that pleaded facts must show "more than the mere possibility of misconduct"); *cf. Parks v. Conley*, 178 F.3d 1295 (6th Cir. 1999) (unpublished opinion) (concluding, in context of prison setting, that correctional officer's refusal to remove handcuffs so that prisoner could receive treatment for asthma attack did not violate prisoner's rights because officer "agreed to remove the handcuffs after the hospital staff explained that it would be necessary to treat" prisoner).

Third, Plaintiff cannot state a claim against the City simply by asserting that it failed to train its employees, *see Iqbal*, 556 U.S. at 678 (explaining that conclusory statements are insufficient to state a claim), nor does one incident of allegedly wrongful conduct establish a basis for municipal liability, *see Dunn v. City of Elgin*, 347 F.3d 641, 646 (7th Cir. 2003). Thus, even if Plaintiff could identify facts from which it may be inferred that the arresting officers violated the Constitution, his mere contention that the City failed to train its officers is insufficient to establish a claim against the City.

Finally, the Court discerns no basis for a claim under section 1983 against State's Attorney Foxx, her office, or her assistants. Prosecutors are absolutely immune from suits for damages arising from prosecutorial actions that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *see Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (collecting cases). A prosecutor's act of reviewing, approving, and issuing charges constitutes "an act toward initiating a prosecution and in presenting the State's case" that is subject to immunity. *Spiegel v. Rabinovitz*, 121 F.3d 251, 257 (7th Cir. 1977) (internal quotation marks omitted). "[A]bsolute immunity shields prosecutors even if they act maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Smith*, 346 F.3d at 742 (internal quotation marks omitted). In other words, Plaintiff cannot sue the prosecutors in this Court for any damages he sustained as a result of his criminal proceedings.

Accordingly, Plaintiff's complaint is dismissed without prejudice for failure to state a claim. If Plaintiff wants to proceed with this lawsuit, he must submit an amended complaint that states a federal claim against proper defendants. Any amended complaint must be submitted on the Court's required form. *See* Local Rule 81.1. Any amended complaint also must comport with Federal Rule of Civil Procedure 11; Rule 11 provides that by signing a pleading, a party represents to the Court that his claims are warranted by existing law and that the factual contentions have evidentiary support or likely will have evidentiary support after further investigation. Fed. R. Civ. P. 11(b). Plaintiff must write both the case number and the judge's name on the amended

complaint, sign it, and return it to the Prisoner Correspondent. Plaintiff is cautioned that an amended pleading supersedes the original complaint and must stand complete on its own. Therefore, all allegations against all defendants must be set forth in the amended complaint without reference to the original complaint. Any documents Plaintiff wants the Court to consider in its threshold review of the amended complaint also must be attached. Plaintiff is advised to keep a copy for his files.

The Clerk will provide Plaintiff with an amended civil rights complaint form and instructions along with a copy of this order. Failure to submit an amended complaint by the date set forth above will result in dismissal of this lawsuit for failure to state a claim.

Date:   February 8, 2019                                        /s/Virginia M. Kendall
                                                                United States District Judge